IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALBERT L. LOPEZ,

    Plaintiff,

vs.                                                                        CIV No. 14-50 CG

CAROLYN W. COLVIN,
Acting Commissioner
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Albert Lopez's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum*, ("Motion"), (Doc. 17), filed May 23, 2014; Defendant's *Brief in Response to Plaintiff's Motion to Reverse or Remand*, ("Response"), (Doc. 20), filed August 18, 2014; and *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Reverse or Remand*, ("Reply"), (Doc. 21), filed September 9, 2014.

On December 8, 2008, Mr. Lopez filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, alleging disability commencing December 1, 2003. (Administrative Record "AR" 63; 108-11). Mr. Lopez's earnings records indicate that he remained insured for benefits through December 31, 2004, ("date last insured"). (AR 395). His claim for benefits was initially denied, (AR 63-66), and again upon reconsideration. (AR 69-71). Administrative Law Judge ("ALJ") Ann Farris then conducted a hearing on January 25, 2010, (AR 25-60), and issued an unfavorable decision on February 12, 2010. (AR 11-23). Following the decision, Mr. Lopez appealed to the United States District Court, and on June 5, 2012,

Magistrate Judge Alan C. Torgerson remanded the case to the Social Security Administration based on several legal errors. (AR 429-48).

On remand, the Appeals Council sent the case to ALJ Howard K. Treblin, (AR 449-50), who held a hearing on August 29, 2013. (AR 409-28). Mr. Lopez and Behnush Barzegarian, an impartial vocational expert ("VE"), testified at the hearing. (*Id.*) Mr. Lopez was represented at the hearing by attorney Gary Martone. (AR 395). ALJ Treblin issued an unfavorable decision on October 25, 2013, finding that Mr. Lopez was not disabled under the Social Security Act between December 1, 2003 and December 31, 2004. (AR 395-402). Pursuant to 20 C.F.R. § 404.984, the decision of ALJ Treblin is the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.[1]

Mr. Lopez argues that the ALJ committed reversible, legal error by failing to: (1) find Mr. Lopez's post-traumatic stress disorder ("PTSD") severe at step two, and failing to consider its effect on his residual functional capacity ("RFC"); (2) or consider the finding of disability by the Veterans' Administration ("VA"); and (3) make findings regarding the physical and mental demands of Mr. Lopez's past relevant work. (Doc. 17 at 14).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to consider the disability finding by the VA

---

[1] "When a case is remanded by a Federal Court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case." 20 C.F.R. § 404.984(a). The Appeals Council may assume jurisdiction based on a claimant's written exceptions to the ALJ's decision or on its own authority within sixty days of the decision. *Id.* at § 404.984(b), (c). Here, Mr. Lopez did not file written exceptions to ALJ Treblin's decision, and the Appeals Council has not otherwise assumed jurisdiction. Therefore, ALJ Treblin's decision is the final decision of the Commissioner. *Id.* at 404.984(d).

and make findings as to the mental demands of Mr. Lopez's past relevant work, the Court finds that the Motion should be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*,

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III.   Background

Mr. Lopez originally filed for DIB due to bilateral feet, back problems, PTSD, two left-finger amputations, hiatal hernia, and diverticulitis. (AR 63). During the period in adjudication, Mr. Lopez sought continuous treatment at the VA. (AR 164-315).

Mr. Lopez alleges to suffer from chronic low back pain following a fall in 1991 as a paratrooper while serving in the military. (AR 267). An MRI of his back shows "mild left L4-L5 inferior neural foraminal narrowing due to a foraminal disc protrusion with a small annular tear." (AR 269). As a result, Mr. Lopez sought pain management in the form of pain medications, including Motrin and Tylenol, (AR 263-264, 296, 362), and spinal injections. (AR 271, 362).

In addition, two of Mr. Lopez's fingers on his left hand have been partially amputated. (AR 296, 414). The amputations were required after Mr. Lopez injured his fingers while he was working as an auto mechanic. (AR 304, 414). During the period in adjudication, Mr. Lopez had surgery to remove nails that continued to grow on his amputated fingertips and had caused him additional pain. (AR 276, 286, 289, 301).

Mr. Lopez also alleges to suffer from depression and PTSD related to his service in the military. Mr. Lopez was diagnosed with dysthymia and sought treatment for symptoms of depression through the relevant period. (AR 266, 290, 298, 303, 308). Mr.

Lopez was later diagnosed with PTSD in 2006. (AR 236-40).

The VA found Mr. Lopez to be 60% disabled and 100% unemployable due to his service-connected conditions. References to this finding appear throughout the record. (AR 266, 267, 286, 361, 654, 737, 774). The VA records indicate that Mr. Lopez was found to be 60% disabled from chronic pain; 50% based on his "flat feet" and 10% based on his back condition. (AR 654). There are also references to Mr. Lopez being disabled due to service-connected "conditions of the skeletal system." (AR 286).

As an initial matter, the ALJ found that Mr. Lopez last met the insured status requirements of the Social Security Act on December 31, 2004. (AR 397). The ALJ then began the five-step sequential evaluation process.

At step one, the ALJ found that Mr. Lopez did not engage in substantial gainful activity during the closed period. (AR 397). At step two, the ALJ concluded that Mr. Lopez was severely impaired by back pain secondary to left low lumbar facet and SIJ arthropathy and status post partial amputations of the left index and middle fingers. (*Id*). He found that Mr. Lopez's bilateral feet pain, hiatal hernia, gastroesaphageal reflux disease, cardiovascular condition, dysthymia and depression, PTSD, and alcohol use were not severe impairments. (AR 398).

At step three, the ALJ determined that none of Mr. Lopez's impairments, solely or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. (AR 398).

The ALJ proceeded to step four. The ALJ found that Mr. Lopez's statements as to the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with his RFC assessment. (AR 399). He based this

finding on Mr. Lopez's daily activities as reported throughout the record, including his ability to hunt and spend many days in the woods, and to walk one to two miles. (*Id*). The ALJ also considered objective medical evidence, including MRI scans, physical and mental status examinations, medical treatment plans, the lack of side effects from medication, and the fact that none of Mr. Lopez's physicians opined that he is disabled. (AR 399-400). As for opinion evidence, the ALJ gave significant weight to the opinion of the State Agency medical consultant, and some weight to the State Agency psychiatric consultant. (AR 400).

The ALJ ultimately found that Mr. Lopez could perform medium work as defined in 20 C.F.R. § 404.1567(c), except he could not sit, stand, or walk for more than six hours in an eight-hour workday, was limited to occassional fingering with the left hand, and must avoid extreme cold. (AR 399). The ALJ then explained that, based on the testimony from the VE, Mr. Lopez is able to perform his past relevant work as a phlebotist, service manager, and an auto mechanic. (AR 401). Accordingly, he found that Mr. Lopez was not disabled under the Social Security Act. (*Id*).

**IV.   Analysis**

Mr. Lopez claims that the ALJ committed several reversible errors by: (1) failing to find Mr. Lopez's PTSD severe at step two, and to consider its effect on his RFC; (2) failing to consider the finding of disability by the VA; and (3) failing to make findings regarding the physical and mental demands of Mr. Lopez's past relevant work. (Doc. 17 at 14).

The Commissioner responds that the ALJ did not err in finding Mr. Lopez's PTSD to be a non-severe impairment because he was not diagnosed with PTSD until after the

date last insured. (Doc. 20 at 5). Even if Mr. Lopez's PTSD was found to be severe, the ALJ explained in step four that Mr. Lopez's mental impairments did not cause any significant limitations. (Doc. 20 at 5). Further, the Commissioner maintains that it was clear the ALJ considered the VA findings of disability, although he did not discuss the findings in his written decision. (Doc. 20 at 6). The Commissioner argues that any error with regard to the VA finding does not warrant a remand because the error did not prejudice Mr. Lopez. (Doc. 20 at 7-8). Finally, the Commissioner contends that the ALJ made sufficient findings as to the demands of Mr. Lopez's past relevant work. (Doc. 20 at 8).

    A. *Mr. Lopez's Challenge to the ALJ's Finding at Step Two*

Mr. Lopez argues that the ALJ erred in finding that his PTSD was a non-severe impairment at step two of the sequential analysis, and consequently failed to consider its effects on his RFC. In this case, the ALJ found that Mr. Lopez's back pain due to left low lumbar facet and arthropathy and status post-partial amputations of the left index and middle fingers were severe impairments. (AR 397). The ALJ did not find Mr. Lopez's PTSD to be severe. (AR 398). The ALJ reasoned that Mr. Lopez was not diagnosed with PTSD until after the last date insured and that there is otherwise no evidence of anxiety complaints or evidence of PTSD during the period in adjudication. (*Id*).

At step two, "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (quotations omitted). This is referred to as a "de minimus" standard. *See id*. The

claimant need only establish—and an ALJ need only find—one severe impairment to avoid a denial of benefits at that step. *Dray v. Astrue*, No. 09-7058, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009) (unpublished). If the ALJ finds the claimant has a severe impairment, then she may not deny benefits at step two, and must proceed to step three. *See id.* Therefore, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe." *Id.*

Mr. Lopez's argument that the ALJ erred at step two fails as a matter of law. At step two, all the ALJ was required to do was determine whether Mr. Lopez suffered from at least one severe impairment, and if so, proceed to step three of the sequential analysis. The ALJ found that Mr. Lopez was severely impaired with back pain and status post-partial amputations, and proceeded to step three; therefore, any error at step two with respect to Mr. Lopez's PTSD was harmless. *See id.* (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)). The Court cannot find that the ALJ committed reversible legal error at step two.

B. *Mr. Lopez's Challenges to the ALJ's Findings at Step Four*

At step four, Mr. Lopez argues that the ALJ first erred by failing to consider the findings of disability and unemployability by the VA in making his RFC determination. Second, Mr. Lopez contends the ALJ erred by failing to make findings as to the physical and mental demands of Mr. Lopez's past relevant work. (Doc. 17 at 10, 12).

The Commissioner responds that it was clear the ALJ considered the VA finding, but did not find it persuasive. (Doc. 20 at 6-8). In any event, the Commissioner argues, his failure to discuss the finding was harmless error. (Doc. 20 at 7-8). Second, the

Commissioner contends that the ALJ made sufficient findings as to Mr. Lopez's past relevant work, and that Mr. Lopez fails to show the ALJ had the duty to develop the record further. (Doc. 20 at 8-9).

Step four of the sequential evaluation process is composed of three phases in which the ALJ must make specific findings. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.

*Doyal v. Barnhart*, 331 F.3d at 760 (citing *Winfrey*, 92 F.3d at 1023 (citations omitted)). The Court will address Mr. Lopez's arguments in terms of these three phases.

   1. *Phase One: Mr. Lopez's RFC and the VA Disability Finding*

Mr. Lopez argues that the ALJ erred by not considering the disability finding of the VA in making the RFC determination. (Doc. 17 at 10). Mr. Lopez contends that, although the VA disability determination is not binding on the ALJ, the ALJ was at least required to consider the determination and explain why he did not find it persuasive. (Doc. 21 at 2).

The Commissioner responds that, while the ALJ did not discuss the VA findings, it was clear that he was aware of those findings, and did not accept them as persuasive. (Doc. 20 at 6-7). The ALJ based his decision on records that referenced the finding, Mr. Lopez's daily activities, and his treatment history. (Doc. 20 at 7). Further, the Commissioner argues that, even if the ALJ's omission constitutes an error, there is no prejudice to Mr. Lopez. (Doc. 20 at 7-8). Therefore, it is inappropriate to remand on this

basis. (*Id*).

In the first phase of step four, the ALJ must evaluate a claimant's RFC. "In determining a claimant's physical abilities, the ALJ should 'first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis.'" *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1545(b)). In doing so, the ALJ must consider all the claimant's "impairments(s), and any related symptoms … [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Sissom v. Colvin*, No. 12-6131, 512 Fed. Appx. 762, 767 (10th Cir. Mar. 1, 2013) (unpublished) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). The RFC assessment is based on all of the evidence in the case record, both medical and non-medical. *Sissom*, 512 Fed. Appx. at 767.

In this case, the ALJ found Mr. Lopez to have the RFC to perform "medium work, except sit, stand or walk for more than six hours in an eight-hour workday; occasional fingering with the left hand; and avoid extreme cold."[3] (AR 399). The ALJ specifically noted that Mr. Lopez's "depression related to dysthymia was controlled so no significant mental limits are warranted." (AR 401).

Disability findings by other government agencies may be evidence of a claimant's physical and mental abilities. "Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered." *Baca v. Dep't of Health and Hum. Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) (internal quotations omitted). It is well established that an ALJ must consider a VA disability rating in making his RFC

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

11

finding, and explain why he does not find it persuasive. *Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) (citing *Baca*, 5 F.3d at 480).

Here, the VA medical records indicate that Mr. Lopez was rated 60% disabled, and 100% unemployable for chronic pain. (AR 266, 267, 654). The ALJ did not mention the VA disability and unemployability findings in his decision, or explain why he did not find them persuasive. (AR 395-402). Based on Tenth Circuit jurisprudence, his failure to do so was error. *Miller v. Barnhart*, No. 01-2231, 43 Fed. Appx. 200, 205 (10th Cir. July 22, 2002) (unpublished).

The Commissioner urges the Court to decline to remand on this basis, arguing that the ALJ's omission did not prejudice Mr. Lopez. An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 375 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, Tenth Circuit precedents "allow the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

Specifically, the Commissioner argues that there is sufficient evidence to indicate that the ALJ would not have found the VA findings persuasive, even if he had considered them in his decision. (Doc. 20 at 7-8). Further, the Commissioner argues

that no reasonable factfinder could have resolved the matter in any other way, since the VA disability finding was based largely on Mr. Lopez's flat feet, and not his back pain or alleged PTSD. (Doc. 20 at 8).

From at least February, 2004, the VA found Mr. Lopez to be 100% unemployable based on his disability. (AR 266, 267). The VA records indicate that Mr. Lopez was found to be 60% disabled from chronic pain; 50% based on his "flat feet" and 10% based on his back condition. (AR 654). The ALJ discussed these findings with Mr. Lopez during the hearing. (AR 419-20). Contrary to the Commissioner's argument, Mr. Lopez did allege to suffer from bilateral foot pain in his original application for DIB. (AR 63). Mr. Lopez also mentioned his foot pain during the hearing. (AR 414, 419). In fact, the ALJ addressed this allegation in his decision, stating that "[t]he claimant has alleged disability due to bilateral feet problems." (AR 399). The ALJ noted that "during the period in issue, there is no documentation of any complaints or clinical signs regarding his feet." (AR 398). Based on the VA disability finding, however, this determination is incorrect.

In addition, the VA finding is largely inconsistent with the ALJ's RFC determination that Mr. Lopez could perform medium work, creating a greater need for extensive analysis. *See Howard*, 379 F.3d at 947; *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-65 (10th Cir. 2012) (holding that the ALJ's failure to weigh medical opinions was harmless since any medical opinions in the record on the claimant's ability to work were consistent with the RFC finding). Indeed, even though the VA found Mr. Lopez to be 60% disabled and 100% unemployable due to chronic pain, the ALJ ultimately found that Mr. Lopez could sit, stand, and walk for up to six hours in an eight

hour work day. (AR 399).

Given these inconsistencies, the Court cannot confidently say that, even after considering the VA disability finding, no reasonable administrative factfinder could have found Mr. Lopez capable of anything less than medium work.[4] Therefore, the ALJ's failure to consider the VA's disability finding is not harmless, and is reversible error. On remand the ALJ should address the VA's disability finding and explain why it is not persuasive.

*2. Phase Two: The Demands of Mr. Lopez's Past Relevant Work*

In phase two of step four, Mr. Lopez argues that the ALJ erred by failing to determine the physical and mental demands of his past relevant work, and improperly delegating that responsibility to the VE. (Doc. 17 at 12). Although the physical exertion requirements of Mr. Lopez's past work were discussed to classify the jobs under the Dictionary of Occupational Titles ("DOT"), other physical and mental demands were not discussed by the ALJ or the VE. (*Id*).

The Commissioner disagrees, arguing that the ALJ made sufficient findings as to the demands of Mr. Lopez's past relevant work. (Doc. 20 at 8). The Commissioner contends that under Tenth Circuit case law, the DOT definitions provided by the VE, and relied upon by the ALJ, are acceptable evidence of the demands of Mr. Lopez's past relevant work. (Doc. 20 at 8-9).

At step four, the ALJ will ultimately find a claimant to be "not disabled" when he

---

[4] The ALJ found that Mr. Lopez's past relevant work ranges from light to medium work. (AR 401). The Court notes that after considering the VA disability finding, a reasonable administrative factfinder could conclude that Mr. Lopez was capable of only sedentary work, altering the remaining analysis at step four and potentially the ultimate disability finding. *See Hunter v. Astrue*, No. 08-2209, 321 Fed. Appx. 789, 793 (10th Cir. April 20, 2009) (unpublished) (finding harmless error in the ALJ's determination that the claimant retained the RFC to perform medium work where a claimant's past relevant work was sedentary).

finds that he retains the RFC to perform: (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *See McAnally v. Astrue*, No. 07-7010, 241 Fed. Appx. 515, 520 (10th Cir. July 23, 2007) (unpublished) (citing Social Security Ruling ("SSR") 82-61, 1982 WL 31387 at *2). In making this determination, the second phase of step four requires the ALJ to make findings regarding the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1024.

"To make the necessary findings, the ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations." *Id.* "It is well established that 'the agency accepts the [definitions in the *Dictionary of Occupational Titles* ] as reliable evidence at step four of the functional demands and job duties of a claimant's past job as it is usually performed in the national economy.'" *Bowman v. Astrue*, 511 F.3d 1270, 1273 n.1 (10th Cir. 2008) (citing *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999) (quotations omitted)). It is entirely proper for an ALJ to rely on VE testimony of the DOT definitions to make his findings. *See Franz v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007).

However, "when [the] claimant has a mental impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety … in order to determine if the claimant's mental impairment is compatible with the performance of such work." *Winfrey*, 92 F.3d at 1024. The ALJ's duty to make findings as to the mental demands of past relevant work extends to both severe and non-severe mental impairments. *See Dorman v. Astrue,* No. 10-5166, 435

Fed. Appx 792, 795-96 (10th Cir. Aug. 16, 2011) (unpublished). It is essential that there be some evidence to establish not only the physical, but also the mental demands of a claimant's past relevant work; indeed, this evidence is necessary to support a finding at phase three that the claimant retains the mental RFC to perform such work. *See id*; *Sissom*, 512 Fed. Appx. at 769.

Here, Mr. Lopez was diagnosed with dysthymia and continuously treated for symptoms of depression throughout the period of adjudication. (AR 266, 290, 298, 303, 308). The ALJ found that Mr. Lopez's depression was not a severe impairment, reasoning that during the relevant period he was not prescribed psychotropic medications, was assigned global assessment of functioning ("GAF") ratings between 60-65, and mental status examinations had been unremarkable.[5] (AR 398). The ALJ incorporated this analysis into his RFC determination, (AR 399), and concluded that Mr. Lopez's depression "was controlled, so no significant mental limits are warranted." (AR 401).

The ALJ then took testimony from the VE as to the classifications of Mr. Lopez's past relevant work. (AR 424-25). The VE testified that, based on the DOT definitions, Mr. Lopez's past work as: a phlebotist was light and semi-skilled; a service manager was light and skilled; and an auto mechanic was medium and skilled. (AR 401, 424-25). The ALJ did not inquire further, or make any other findings, about the nature of Mr. Lopez's past relevant work.

---

[5] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley,* 373 F.3d at 1122 n.3 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM–IV–TR") at 32). GAF scores between 60-65 can indicate mild to moderate symptoms or difficulty in social, occupational, or school functioning. *See Roybal v. Astrue,* No. 06-4189, 224 Fed. Appx. 843, 845 n.2 (10th Cir. May 22, 2007) (unpublished) (citing DSM-IV at 34); *Vititoe v. Colvin*, No. 12-1484, 549 Fed. Appx. 723, 726 n.2 (10th Cir. Nov. 29, 2013) (unpublished) (citing DSM-IV at 34).

Given Mr. Lopez's diagnosis and treatment history of depression, he suffered from a mental impairment. Regardless of whether Mr. Lopez's psychological limitations were significant or minimal, the ALJ was required to make precise findings as to the mental demands of Mr. Lopez's past relevant work. *See Winfrey*, 92 F.3d at 1024. The fact that the ALJ found this impairment to be non-severe does not change the analysis. *See Dorman*, 435 Fed. Appx at 795-96. The ALJ's failure to make specific findings as to both the mental and physical demands of Mr. Lopez's past relevant work is reversible error.

### V.     Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly consider evidence of another agency's disability findings or make findings as to the specific mental demands of Mr. Lopez's past relevant work. On remand, the ALJ should consider the VA's disability findings, explain why he finds them unpersuasive, and make specific findings as to the mental demands of Mr. Lopez's past work. The Court does not decide any other issue raised by Mr. Lopez, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum*, (Doc. 17), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE